Benjamin Mills, as counsel for Mercer, filed the following petition for a re-hearing.
The counsel for Mercer, cannot refrain frond soliciting a re-hearing in this case, because they do be-liev'e that the, court has reversed it on grounds untenable.
It is hinted by the court, that one administrator could not sell the slave of his intestate to another. The evidence does not prove a sale. It is simply that it was agreed between them, as they knew there were debts against the estate, that the plaintiffj who was the acting administrator should keep the slave; in other words, pay her value in debts and make her his own. Was there any thing improper in this? Far from it.
If there had been no administrator but one, he could thus elect to keep the slave; in other words, bargain with himself to do so. This, any administrator has a right to do, even with slaves where they must be sold for the payment of debts, and such is the former doctrine of this court, in Haddox’s heirs vs. Haddox’s administrators, V Lit. Rep. 201. The counsel cannot therefore., see any thing improper in the agreement alluded to.
The court seems to think, that, although the defem ■dant below did not plead justification and could not rely on it, that still as the plaintiff proved that there was a fieri facias, the defendant could, therefore, make out a justification. It is true, that the witness who proved the taking of the slave, stated that he *384 had a fieri facias, and the defendant below directed him take the slave. But did this witness, speak-of a fieri facias blended with other evidence, to-wit: the taking which he was called to prove, allow ^he ¿efen(jant below to take it for granted, that there was a fieri facias, and that without a judgment too,' .and rely upon it? Certainly not. The record shows that the fieri facias was not used, and the court certainly decided it improper. Because the defendant below, now appellant, offered the supposed judgment and fieri facias,and it was excluded as evidence, because there was no justification pleaded, and a bill of exceptions is taken to that opinion. Now if the legal evidence of a fieri facias is excluded, and the appellant was not allowed to avail himself of it by legal evidence, can it be right to permit him to avail himself of it when spoken of illegally by a witness on' the trial? Certainly the court on a motion fora non-suit, where the court decides on the evidence, would not, and ought not to take into consideration the illegal and incompetent testimony of a witness.
Petition. for a e- eanag.
But the main pivot on which the court has turned the cause, is a supposed defect of proof, for which defect, the court suppose the court below ought to have’ sustained the motion to instruct as in case of non-suit, on the issue of not guilty. That supposed defectis, that the plaintiff failed to show that.he had acquired title before the execution come tó the hands of the sheriff, and was endorsed. Before this defect is available, it ought to be shewn, first, that there was an execution, and secondly, that it vfras endorsed- at' all.
But to come at this, a complete compendium of thef evidence will now be given.-
Samuel Campbell,' the first witness, stated, that about the 10th of July, 1828, he, as sheriff of Caldwell, had an execution against John Mercer and Win.Mercer, (now appellee and plaintiff below) as administrators of John Mercer, deceased, in favor of Philip' Force, and that the defendant told the witness to levy the execution oil the negro now in contest, and that she belonged to the estate of Jno. Mercer, dec’d. The-witness accordingly went to where the plaintiff lived and found the slave at the spring, and the defendant *385 i-oid him that was the slave, and directed him to levy on her, which he did, and took her to the house, and the plaintiff gave a delivery bond for her, to produce her at the day of sale; and she was delivered accordingly, and sold for $98. That plaintiff told witness when he took her to the house, that she was his own, and not subject to the fieri facias, but he did not know whether defendant heard this statement or not, tho’ he might have done it.
Petition for a rehearing.
John Mercer, the co-administrator with the plaintiff, next stated, that he and the plaintiff were the sons and administrators of John Mercer, deceased, and that the slave belonged to said decedent at his death, thats ome tune shortly after the appraisement of the estate, the plaintiff and witness agreed between themselves, that the plaintiff should have and retain the slave, and the plaintiff should pay debts equal to the amount of her value, though the debts were not specified or particularized; that the plaintiff did af-terwards pay off and discharge debts against the estate to an amount above the value of said slave, tho’ witness could not state when the payments were made, or what particular debts were paid. The plaintiff did the business of the administration generally. That no debts due to the estate had been collected. That the whole estate was appraised and sold, except a colt of the value of $25, which was omitted; why, the witness could not tell. That the slave was set apart by that arrangement between them and was, and remained in plaintiff’s possession ever after said agreement, that she might wait on his mother, who lived with the plaintiff.
This is the whole parol evidence touching the point of title (except some as to value) given, and yet it is alleged, that it proved no title, on which these re* marks are offered.
In a motion for a non-suit, which partakes of the nature of demurrer to evidence, the evidence is ta* ken as true, and every rational inference deduceable, from it. If on such motion, there is any fact uncertain, the court will overrule the motion, and leave it with the jury to ascertain that fact. The most that could be said from the whole, is, that it might, from this statement, be somewhat uncertain, whether the *386 debts were paid or the execution endorsed first, if the execution is to betakenintoconsideration atall (which -is denied). But there are circumstances from which a the jury, or even a court might have inferred that the debts were first paid. After administration appraisement and sale follow in quick succession, and the law will presume the administrators did their duty. It must be six months after administration, before Philip Ford, the plaintiff in the supposed fieri facias could even sue, and during this period, and pending his suit, administration was going on, and plenty of time given the administrator to pay and make the slave his own.
Petition for re-hearing.
But we do not rely on these inferences alone. For this is not all the evidence given. There was some of a more unerring nature. The appraisement dated 19th May, 1827, the sale bill dated the 18th May, 1827, and a complete settlement with the county court, were also read by the plaintiff’s counsel to the jury. The whole appraisement, including the slave, amounted to ,§732 27. The sale bill to far less, even including the price of the slave which was not sold, but retained under the arrangement spoken of by the witness. By the settlement, the administrators had disbursed $>811 61, amounting to far more than the slave and sale bill, and were beyond the ap-praisement, including the colt that had been omitted. On looking over this settlement, it will be found, that all the voluntary payments were made long before the witness spoke of the execution, and the rest are judgments, which of course had preference, or either of which the administrator had a right to prefer. Such a settlement as sanctioned by a county court,, must have a prima facie effect in a contest with creditors. In Burnes vs. Burton, I Mar. 349. Such a settlement in a court of law made pendente lile, was held good prima facie evidence against a creditor, and so it is here. It is, therefore, not only inferrable, but morally certain, that the administrator plaintiff, by, and with the assent of his co-administrator, had elected to make the slave his own at her appraised value, (which stands good till disproved) and had actually paid that value, before any parol proof of an execution was given.
executor or administrator may, nn-cfroumstan-*1 ces, pay with l)is own dliTfrom^the3 estate of his testator or éuofto^akef ¿ specific chattle as a j°0“pen3a'
An election merely, by an executor or to take^aspe-cifin chattle belonging to estate^wiil”43 not, vvithout the payment» jn the executor or administrator indi-vil*ua
This view of the evidence, will be found to be correct, and the counsel, conceives that is sufficient to sustain the action, and they indulge the hope, that the court will grant a re-hearing in the cause.